1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11   MAYELLA D. CERVANTES,        )   Case No. CV 12-3794 JC
                                  )
12            Plaintiff,          )
                                  )   MEMORANDUM OPINION
13       v.                       )
                                  )
14                                )
     MICHAEL J. ASTRUE,           )
15   Commissioner of Social       )
     Security,                    )
16                                )
                                  )
17            Defendant.          )
     _____  )

18
19   **I.    SUMMARY**
20          On May 4, 2012, plaintiff Mayella D. Cervantes ("plaintiff") filed a
21   Complaint seeking review of the Commissioner of Social Security's denial of
22   plaintiff's application for benefits.  The parties have consented to proceed before a
23   United States Magistrate Judge.
24          This matter is before the Court on the parties' cross motions for summary
25   judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The
26   Court has taken both motions under submission without oral argument.  <u>See</u> Fed.
27   R. Civ. P. 78; L.R. 7-15; May 7, 2012 Case Management Order ¶ 5.
28   ///

1

1    Based on the record as a whole and the applicable law, the decision of the

2    Commissioner is AFFIRMED.  The findings of the Administrative Law Judge

3    ("ALJ") are supported by substantial evidence and are free from material error.[1]

4    **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5    **DECISION**

6    On July 22, 2008, plaintiff filed an application for Supplemental Security

7    Income benefits.  (Administrative Record ("AR") 146).  Plaintiff asserted that she

8    became disabled on January 1, 1997 due to mental trauma.  (AR 174).  On

9    October 1, 2009, the ALJ examined the medical record, heard brief testimony from

10   plaintiff, ordered a consultative psychological evaluation of plaintiff, and

11   continued the hearing so plaintiff could obtain representation.  (AR 76-83).  At a

12   supplemental hearing on October 27, 2010, the ALJ heard further testimony from

13   plaintiff (who appeared with a non-attorney representative) and testimony from

14   plaintiff's mother, a medical expert, and a vocational expert.  (AR 38-72).

15   On November 19, 2010, the ALJ determined that plaintiff was not disabled

16   through the date of the decision.  (AR 26-34).  Specifically, the ALJ found:

17   (1) plaintiff suffered from the following severe impairments:  dysthymia with

18   anxiety and borderline intellectual functioning (AR 28); (2) plaintiff's

19   impairments, considered singly or in combination, did not meet or medically equal

20   a listed impairment (AR 28-30); (3) plaintiff retained the residual functional

21   capacity to perform a full range of work at all exertional levels with certain non-

22   exertional limitations[2] (AR 30); (4) plaintiff had no past relevant work (AR 33);

23

24   ―――――――――――

25   [1]The harmless error rule applies to the review of administrative decisions regarding
     disability.  See Molina v. Astrue, 674 F.3d 1104, 1115-22 (9th Cir. 2012) (discussing contours of
26   application of harmless error standard in social security cases) (citing, *inter alia*, Stout v.
     Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006)).

27

28   [2]More specifically, the ALJ determined that plaintiff (i) could perform a full range of
     work at all exertional levels; (ii) was limited to simple repetitive tasks in an object oriented

     (continued...)

1 (5) there are jobs that exist in significant numbers in the national economy that
2 plaintiff could perform, specifically bagger, basket filler, and production helper
3 (AR 33); and (6) plaintiff's allegations regarding her limitations were not credible
4 to the extent they were inconsistent with the ALJ's residual functional capacity
5 assessment (AR 31).

6        The Appeals Council denied plaintiff's application for review.  (AR 5-9).

7 **III.   APPLICABLE LEGAL STANDARDS**

8        **A.   Sequential Evaluation Process**

9        To qualify for disability benefits, a claimant must show that the claimant is
10 unable "to engage in any substantial gainful activity by reason of any medically
11 determinable physical or mental impairment which can be expected to result in
12 death or which has lasted or can be expected to last for a continuous period of not
13 less than 12 months."  Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012)
14 (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The
15 impairment must render the claimant incapable of performing the work claimant
16 previously performed and incapable of performing any other substantial gainful
17 employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094,
18 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

19        In assessing whether a claimant is disabled, an ALJ is to follow a five-step
20 sequential evaluation process:

21        (1)   Is the claimant presently engaged in substantial gainful activity?  If
22              so, the claimant is not disabled.  If not, proceed to step two.

23        (2)   Is the claimant's alleged impairment sufficiently severe to limit
24              the claimant's ability to work?  If not, the claimant is not
25              disabled.  If so, proceed to step three.

26
27 _____
28 [2](...continued)
setting; (iii) should avoid tasks involving constant problem solving; and (iv) required habituated
tasks.  (AR 30).

3

(3)   Does the claimant's impairment, or combination of
impairments, meet or equal an impairment listed in 20 C.F.R.
Part 404, Subpart P, Appendix 1?  If so, the claimant is
disabled.  If not, proceed to step four.

(4)   Does the claimant possess the residual functional capacity to
perform claimant's past relevant work?  If so, the claimant is
not disabled.  If not, proceed to step five.

(5)   Does the claimant's residual functional capacity, when
considered with the claimant's age, education, and work
experience, allow the claimant to adjust to other work that
exists in significant numbers in the national economy?  If so,
the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th
Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at
1110 (same).

The claimant has the burden of proof at steps one through four, and the
Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262
F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch
v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of
proving disability).

**B.     Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of
benefits only if it is not supported by substantial evidence or if it is based on legal
error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.
2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457
(9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion." Richardson v. Perales,
402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a

4

1   mere scintilla but less than a preponderance.  <u>Robbins</u>, 466 F.3d at 882 (citing
2   <u>Young v. Sullivan</u>, 911 F.2d 180, 183 (9th Cir. 1990)).

3       To determine whether substantial evidence supports a finding, a court must
4   "'consider the record as a whole, weighing both evidence that supports and
5   evidence that detracts from the [Commissioner's] conclusion.'"  <u>Aukland v.</u>
6   <u>Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting <u>Penny v. Sullivan</u>, 2 F.3d
7   953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming
8   or reversing the ALJ's conclusion, a court may not substitute its judgment for that
9   of the ALJ.  <u>Robbins</u>, 466 F.3d at 882 (citing <u>Flaten</u>, 44 F.3d at 1457).

10  **IV.   DISCUSSION**

11      **A.      New Evidence Plaintiff Submitted to the Appeals Council Does**
12              **Not Warrant a Remand**

13              **1.      Background**

14      On August 12, 2008, Dr. Ahmad Riahinejad, a consultative state-agency
15  psychologist, performed a complete psychological evaluation of plaintiff, which
16  included a mental status evaluation and objective psychological testing.[3]  (AR
17  266-70).  Based on his examination of plaintiff and the results of the objective
18  testing, Dr. Riahinejad diagnosed plaintiff with dysthymia with anxiety and
19  opined, *inter alia*, that plaintiff (i) had borderline intellectual functioning; (ii) was
20  able to understand, remember and carry out simple and repetitive instructions;
21  (iii) would have significant difficulty understanding, remembering and carrying
22  out complex and detailed instructions; (iv) was able to accept instructions from a
23  supervisor and relate with coworkers; and (v) would have problems in fast-paced
24  jobs.  (AR 268-70).

25      On August 27, 2008, a non-examining, state-agency physician reviewed
26  plaintiff's medical records and concluded that although plaintiff was markedly

27  _____

28      [3]Dr. Riahinejad administered the following tests:  Trailmaking Test, Parts A and B;
    Wechsler Adult Intelligence Scale-III; and Wechsler Memory Scale-III.  (AR 266).

5

1   limited in her ability to carry out detailed instructions, she retained the ability to
2   do simple work.  (AR 271-85).
3        On July 14, 2010, Dr. Steven I. Brawer, a consultative state-agency
4   psychologist, performed a psychological evaluation of plaintiff, which included a
5   mental status evaluation and objective psychological testing.[4]  (AR 289-95).
6   Based on his examination of plaintiff and the results of the objective testing, Dr.
7   Brawer diagnosed plaintiff with depressive disorder, not otherwise specified and
8   opined, *inter alia*, that plaintiff:  (i) had intellectual functioning in the Borderline
9   Range; (ii) would be able to learn a simple, repetitive task; (iii) would likely have
10  difficulty with detailed, varied or complex tasks; (iv) would be able to work
11  independently in performing basic tasks; (v) might have mild limitations in
12  sustaining cooperative relationships with co-workers and supervisors; (vi) may
13  function most optimally in a semi-isolated work setting; and (vii) relates in an
14  appropriate manner with supportive authority figures.  (AR 294-95).
15       At the October 27, 2010 hearing, the ALJ called Dr. Joseph Malancharuvil,
16  a board certified clinical psychologist, as a medical expert.  (AR 40, 62-66).  Dr.
17  Malancharuvil testified, based on his review of plaintiff's medical records and
18  plaintiff's testimony, that plaintiff (i) could do simple and repetitive tasks in an
19  object-oriented setting; (ii) could not do tasks that require constant problem
20  solving; and (iii) was limited to jobs that involved "repetitive habituated task[s]."
21  (AR 62-64).
22       In connection with her application for review, plaintiff submitted additional
23  evidence to the Appeals Council, specifically (1) medical records from plaintiff's
24  April 13-19, 2011 admission to Harbor-UCLA Medical Center for, *inter alia*,
25  anxiety and suicidal thoughts ("UCLA Medical Records") (AR 305-08);
26
27       [4]Dr. Brawer administered the following tests:  Wechsler Adult Intelligence Scale-III,
    Wechsler Memory Scale-III, Bender Gestalt Visual Motor Test-II, Trails A and B, and Test of
28  Memory Malingering.  (AR 289).

1    (2) plaintiff's unofficial community college transcripts from 2007-2011 ("college

2    transcripts") (AR 262, 309-10); and (3) the report of a January 12, 2011

3    psychological evaluation of plaintiff conducted at the request of plaintiff's

4    representative by Dr. Thomas Curtis, a consultative examining psychiatrist (AR

5    312-28) (collectively "additional evidence").

6         The UCLA Medical Records reflect that plaintiff was admitted on April 13,

7    2011 to the Harbor-UCLA Medical Center with multiple severe psychological

8    symptoms including "increased anxiety with thoughts to hurt [sic] herself." (AR

9    305). Plaintiff was tentatively diagnosed with schizophrenia and possible autism,

10   and was prescribed Celexa[5] and Zyprexa.[6] (AR 305-07). When plaintiff was

11   discharged six days later, her "expected course of recovery" was "good" within a

12   "few days," and remained good after one week assuming plaintiff was "properly

13   evaluated" and provided therapy, and followed the discharge plan (*e.g.*, took

14   prescribed medication). (AR 308).

15        In the report of Dr. Curtis' January 12, 2011 psychological evaluation of

16   plaintiff, Dr. Curtis diagnosed plaintiff with dysthymia, chronic depression with

17   anxiety, panic attacks, post-traumatic elements and severe mental confusion and

18   emotional/social withdrawal and opined, in pertinent part, that (a) plaintiff

19   appeared to be of average intelligence with no formal thought disorder;

20   (b) psychological testing revealed abnormality in all of plaintiff's emotional

21   functioning; (c) plaintiff had moderate to marked limitations in all of her mental

22

23

24   _____

25        [5]See Celexa, Drug Information Online, available at http://www.drugs.com/celexa.html
     ("Celexa [] is an antidepressant in a group of drugs called selective serotonin reuptake inhibitors
26   (SSRIs).").

27        [6]See Zyprexa, Drug Information Online, available at http://www.drugs.com/zyprexa.html
     ("Zyprexa is used to treat the symptoms of psychotic conditions such as schizophrenia and
28   bipolar disorder (manic depression) in adults[.]").

1  abilities;[7] (d) plaintiff's severe mental condition had been "ingrained in
2  [plaintiff's] personality since childhood"; and (e) due to the severity of plaintiff's
3  mental condition, plaintiff "would be [unable] to engage in any stable employment
4  within the foreseeable future" (collectively "Dr. Curtis' Opinions") (AR 312-28).

5  　　　The Appeals Council included the additional evidence as exhibits in the
6  administrative record, but denied review, noting that the additional evidence "[did]
7  not provide a basis for changing the [ALJ's] decision."  (AR 5-6, 9).

8  　　　　　　　**2.　　Analysis**

9  　　　Plaintiff essentially contends that a remand is required because, once the
10  additional evidence is considered with the record as a whole, the ALJ's decision is
11  not supported by substantial evidence.  (Plaintiff's Motion at 9-17).  The Court
12  disagrees.  Since the Appeals Council considered the additional evidence in
13  deciding whether to review the ALJ's decision, this Court also must consider such
14  evidence in determining whether the ALJ's decision was supported by substantial
15  evidence and free from legal error.  See Brewes v. Commissioner of Social
16  Security Administration, 682 F.3d 1157, 1162-63 (9th Cir. 2012) ("[W]hen the
17  Appeals Council considers new evidence in deciding whether to review a decision

18  ────────────────────

19  　　[7]Specifically, Dr. Curtis opined that plaintiff had (a) moderate limitations in her abilities
   to (i) understand and remember very short and simple instructions, (ii) carry out very short and
20  simple instructions, (iii) ask simple questions or request assistance, (iv) maintain socially
   appropriate behavior, (v) adhere to basic standards of neatness and cleanliness, (vi) be aware of
21  normal hazards and take appropriate precautions, and (vii) travel in unfamiliar places or use
   public transportation; and (b) marked limitations in her abilities to (i) remember locations and
22  work-like procedures; (ii) understand and remember detailed instructions, (iii) carry out detailed
   instructions, (iv) maintain attention and concentration for extended periods, (v) perform activities
23  within a schedule, maintain regular attendance, and be punctual within customary tolerances,
   (vi) sustain an ordinary routine without special supervision, (vii) work in coordination with or
24  proximity to others without being distracted by them, (viii) make simple work-related decisions,
   (ix) complete a normal workday and workweek without interruptions from psychologically based
25  symptoms, (x) interact appropriately with the general public, (xi) accept instructions and respond
   appropriately to criticism from supervisors, (xii) get along with co-workers or peers without
26  distracting them or exhibiting behavioral extremes, (xiii) respond appropriately to changes in the
27  work setting, and (xiv) set realistic goals or make plans independently of others.  (AR 325-27).

28

　　　　　　　　　　　　　　　　　8

1   of the ALJ, that evidence becomes part of the administrative record, which the

2   district court must consider when reviewing the Commissioner's final decision for

3   substantial evidence."); see also Taylor v. Commissioner of Social Security

4   Administration, 659 F.3d 1228, 1231 (9th Cir. 2011) (courts may consider

5   evidence presented for the first time to the Appeals Council "to determine

6   whether, in light of the record as a whole, the ALJ's decision was supported by

7   substantial evidence and was free of legal error") (citing Ramirez v. Shalala,

8   8 F.3d 1449, 1451-54 (9th Cir. 1993)).   Nonetheless, as discussed more fully

9   below, a remand is not warranted in this case since substantial evidence supported

10  the ALJ's determination that plaintiff was not disabled, and none of the additional

11  evidence plaintiff submitted to the Appeals Council would undermine that non-

12  disability determination.

13                    a.      **Substantial Evidence Supported the ALJ's**

14                            **Determination That Plaintiff Was Not Disabled**

15          When the administrative decision was issued, there was substantial evidence

16  in the record to support the ALJ's determination at step five that plaintiff was not

17  disabled.   First, the ALJ's residual functional capacity assessment (*i.e.*, that

18  plaintiff could do jobs that involved simple and repetitive habituated tasks in an

19  object-oriented setting that did not require constant problem solving) was

20  supported by the opinions of the state-agency examining psychologists, Dr.

21  Riahinejad (who determined that plaintiff could understand, remember and carry

22  out simple and repetitive instructions) (AR 268-70) and Dr. Brawer (who

23  determined that plaintiff would be able to learn a simple, repetitive task) (AR 294-

24  95), and the medical expert, Dr. Malancharuvil (who testified that "[plaintiff was]

25  definitely capable of simple and repetitive [habituated] tasks, in an object-oriented

26  setting" if plaintiff "avoid[ed] tasks that require constant problem solving.") (AR

27  64).   The opinions of Drs. Riahinejad and Brawer were supported by their

28  independent psychological examinations of plaintiff (AR 266-70, 289-95), and

9

1   thus, without more, constituted substantial evidence supporting the ALJ's residual

2   functional capacity assessment.  See, e.g., Tonapetyan v. Halter, 242 F.3d 1144,

3   1149 (9th Cir. 2001) (consultative examiner's opinion on its own constituted

4   substantial evidence, because it rested on independent examination of claimant);

5   Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  Dr. Malancharuvil's

6   testimony also constituted substantial evidence supporting the ALJ's decision

7   since it was supported by the other medical evidence in the record as well as the

8   opinions and underlying independent examinations by Drs. Riahinejad and

9   Brawer.  See Morgan v. Commissioner of Social Security Administration, 169

10  F.3d 595, 600 (9th Cir. 1999) (testifying medical expert opinions may serve as

11  substantial evidence when "they are supported by other evidence in the record and

12  are consistent with it").

13      Second, the hypothetical question the ALJ posed to the vocational expert

14  included all of the limitations in plaintiff's residual functional capacity assessment

15  (including those identified by the testifying medical expert).  (AR 66-68).

16  Therefore, the vocational expert's testimony in response to the hypothetical

17  question – i.e., that there are jobs available in the national economy that plaintiff

18  (or a hypothetical individual with plaintiff's characteristics) could still perform –

19  constituted substantial evidence supporting the ALJ's determination at step five

20  that plaintiff was not disabled.  Tackett, 180 F.3d at 1101 (Testimony from a

21  vocational expert may constitute substantial evidence of a claimant's ability to

22  perform work which exists in significant numbers in the national economy when

23  the ALJ poses a hypothetical question that accurately describes all of the

24  limitations and restrictions of the claimant that are supported by the record.).

25      **b.    None of The Additional Evidence Undermines The**

26           **ALJ's Non-Disability Determination**

27      Plaintiff fails to demonstrate that the additional evidence she submitted to

28  the Appeals Council undermines the ALJ's non-disability determination.  The

1    UCLA Medical Records do not reflect any mental impairment which would satisfy

2    the durational requirement – *i.e.*, a disabling impairment expected to last for *at*

3    *least* twelve months.  See 42 U.S.C. § 423(d)(1)(A); Burch, 400 F.3d at 679.

4    Although plaintiff presented at Harbor-UCLA Medical Center with complaints of

5    significant psychological symptoms, her psychiatric admission lasted only six

6    days, and her recovery within a week after discharge was expected to be "good."

7    (AR 305-08).  At most the UCLA Medical Records reflect a brief deterioration in

8    plaintiff's condition after the ALJ's decision was issued which does not provide a

9    basis for remand in this case.  Cf. Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir.

10   1997) ("Additional evidence showing a deterioration in a claimant's condition

11   significantly after the date of the Commissioner's final decision is not a material

12   basis for remand, although it may be grounds for a new application for benefits.").

13        Plaintiff's unofficial college transcripts also do not provide a basis for

14   remand.  In order to meet her burden to demonstrate disability, plaintiff needed to

15   present evidence of medical signs, symptoms and laboratory findings[8] that

16   establish a severe medically determinable physical or mental impairment.  Molina,

17   674 F.3d at 1110 (citation omitted); see 20 C.F.R. §§ 416.908, 416.912(c),

18   416.913(a), 416.920(a)(4)(ii), 416.928.  Here, plaintiff points to no significant

19   probative evidence which indicates that her community college transcripts in any

20   way reflect mental limitations not already accounted for in the ALJ's residual

21   functional capacity assessment.  Plaintiff's own unsupported lay opinion that her

22   poor performance in college essentially demonstrates her inability to do any work

23   (Plaintiff's Motion at 13) is insufficient to satisfy plaintiff's burden to prove

24

25        [8]A medical "sign" is "an anatomical, physiological, or psychological abnormality that can
26   be shown by medically acceptable clinical and laboratory diagnostic techniques[.]"  Ukolov v.
     Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96-4p,
27   1996 WL 374187, at *1 n.2).  A "symptom" is "an individual's own perception or description of
     the impact of his or her physical or mental impairment(s)[.]"  Id. (quoting SSR 96-4p, 1996 WL
28   374187, at *1 n.2); see also 20 C.F.R. §§ 416.928(a)-(b).

1   disability.  Cf. Gonzalez Perez v. Secretary of Health & Human Services, 812 F.2d

2   747, 749 (1st Cir. 1987) (ALJ may not "substitute his own layman's opinion for

3   the findings and opinion of a physician"); Ferguson v. Schweiker, 765 F.2d 31, 37

4   (3d Cir. 1985) (ALJ may not substitute his interpretation of laboratory reports for

5   that of a physician); Winters v. Barnhart, 2003 WL 22384784, at *6 (N.D. Cal.

6   Oct.15, 2003) ("The ALJ is not allowed to use his own medical judgment in lieu of

7   that of a medical expert.").

8           In addition, plaintiff fails to demonstrate that Dr. Curtis' Opinions contain

9   significant probative evidence of mental limitations not already accounted for in

10  the ALJ's residual functional capacity assessment for plaintiff.  First, it does not

11  appear that Dr. Curtis had any basis for providing a medical opinion regarding

12  plaintiff's mental abilities at any point on or before the date of the ALJ's decision.

13  Cf. Brewes, 682 F.3d at 1162 (Appeals Council only required to consider new

14  evidence that "relates to the period on or before the date of the administrative law

15  judge hearing decision") (citation omitted); 20 C.F.R. § 416.1470(b) (same).  As

16  noted above, there is no evidence that Dr. Curtis ever treated plaintiff or that he

17  examined plaintiff except in connection with the psychological evaluation he

18  conducted almost two months after the ALJ issued his decision.  (AR 312).

19          Second, Dr. Curtis' conclusory statement that plaintiff's "[mental] condition

20  [was] ingrained in her personality since childhood" (AR 327) appears entirely

21  based on plaintiff's subjective reporting and, without more, is insufficient to

22  establish the existence of a medically determinable mental impairment at any point

23  prior to Dr. Curtis' evaluation of plaintiff.  See Ukolov v. Barnhart, 420 F.3d

24  1002, 1005 (9th Cir. 2005) ("[U]nder no circumstances may the existence of an

25  impairment be established on the basis of symptoms alone.") (citations omitted);

26  SSR 96-4p, 1996 WL 374187, at *1-2 ("[R]egardless of how many symptoms an

27  individual alleges, or how genuine the individual's complaints may appear to be,

28  the existence of a medically determinable physical or mental impairment cannot be

1   established in the absence of objective medical abnormalities; i.e., medical signs

2   and laboratory findings."); 20 C.F.R. § 416.908 ("A physical or mental

3   impairment must be established by medical evidence consisting of signs,

4   symptoms, and laboratory findings, not only by your statement of symptoms[.]");

5   see also Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("The ALJ need

6   not accept the opinion of any physician, including a treating physician, if that

7   opinion is brief, conclusory, and inadequately supported by clinical findings.")

8   (citation and internal quotation marks omitted); id. (ALJ may reject medical

9   opinion that is based solely on subjective complaints of claimant and information

10  submitted by claimant's family and friends).

11      Third, Dr. Curtis' non-medical opinion that plaintiff "would be unable to

12  engage in any stable employment within the foreseeable future" (AR 327) is not

13  binding on the Commissioner for any alleged period of disability.  See Boardman

14  v. Astrue, 286 Fed. Appx. 397, 399 (9th Cir. 2008)[9] ("[The] determination of a

15  claimant's ultimate disability is reserved to the Commissioner . . . a physician's

16  opinion on the matter is not entitled to special significance."); 20 C.F.R.

17  § 416.927(e)(1) ("We are responsible for making the determination or decision

18  about whether you meet the statutory definition of disability. . . . A statement by a

19  medical source that you are 'disabled' or 'unable to work' does not mean that we

20  will determine that you are disabled.").

21      Finally, even assuming, for the sake of argument, that Dr. Curtis' Opinions

22  are intended to relate to plaintiff's condition on or before the date of the ALJ's

23  decision, such retrospective opinions based on a one-time consultative

24  examination of plaintiff were entitled to little or no weight as they were

25  inconsistent with the other substantial evidence in the record regarding plaintiff's

26

27

28      [9]Courts may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007.
        See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).

13

mental abilities during the relevant period of disability (*i.e.*, Dr. Riahinejad's consultative examination which found that plaintiff could understand, remember and carry out simple and repetitive instructions (AR 270), the state-agency reviewing physician's opinion that plaintiff could do simple work (AR 273), Dr. Brawer's consultative examination which found that plaintiff would be able to learn simple, repetitive tasks (AR 294-95), and the medical expert's testimony that plaintiff could do simple and repetitive habituated tasks in an object-oriented setting (AR 64)). See Freeman v. Apfel, 208 F.3d 687, 691 (8th Cir. 2000) (Where treating physician's evidence "did not pertain to [claimant's] condition during the relevant period [of disability] and was inconsistent with other substantial evidence that did pertain to the relevant period, the ALJ was under no obligation to give [the treating physician's] opinion controlling weight.") (citations omitted); see also Lind v. Commissioner of Social Security, 2008 WL 4370017, at *14 (S.D. Cal. Sept. 24, 2008) (same; citing, *inter alia*, id.), aff'd 370 Fed. Appx. 814 (9th Cir. 2010); Klett v. Barnhart, 303 F. Supp. 2d 477, 484 (S.D.N.Y. 2004) ("[A] retrospective diagnosis from a physician, particularly one who was not the claimant's treating physician during the relevant time period, may carry less weight if the diagnosis is inconsistent with other substantial evidence in the record.") (citations omitted); see also 20 C.F.R. § 416.927(c)(4) (more weight is given to opinion that is "consistent . . . with the record as a whole"); Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (An ALJ must provide an explanation only when he rejects "significant probative evidence.") (citation omitted).

Accordingly, a remand or reversal on this basis is not warranted.

## B.    The ALJ Properly Evaluated Plaintiff's Credibility

### 1.    Pertinent Law

Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner.  Greger v. Barnhart, 464 F.3d 968, 972 (9th

14

1   Cir. 2006).  If the ALJ's interpretation of the claimant's testimony is reasonable

2   and is supported by substantial evidence, it is not the court's role to "second-

3   guess" it.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

4        An ALJ is not required to believe every allegation of disabling pain or other

5   non-exertional impairment.  Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007)

6   (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).  If the record establishes

7   the existence of a medically determinable impairment that could reasonably give

8   rise to symptoms assertedly suffered by a claimant, an ALJ must make a finding as

9   to the credibility of the claimant's statements about the symptoms and their

10  functional effect.  Robbins, 466 F.3d 880 at 883 (citations omitted).  Where the

11  record includes objective medical evidence that the claimant suffers from an

12  impairment that could reasonably produce the symptoms of which the claimant

13  complains, an adverse credibility finding must be based on clear and convincing

14  reasons.  Carmickle v. Commissioner, Social Security Administration, 533 F.3d

15  1155, 1160 (9th Cir. 2008) (citations omitted).  The only time this standard does

16  not apply is when there is affirmative evidence of malingering.  Id.  The ALJ's

17  credibility findings "must be sufficiently specific to allow a reviewing court to

18  conclude the ALJ rejected the claimant's testimony on permissible grounds and

19  did not arbitrarily discredit the claimant's testimony."  Moisa v. Barnhart, 367

20  F.3d 882, 885 (9th Cir. 2004).

21       To find the claimant not credible, an ALJ must rely either on reasons

22  unrelated to the subjective testimony (e.g., reputation for dishonesty), internal

23  contradictions in the testimony, or conflicts between the claimant's testimony and

24  the claimant's conduct (e.g., daily activities, work record, unexplained or

25  inadequately explained failure to seek treatment or to follow prescribed course of

26  treatment).  Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at

27  680-81; SSR 96-7p.  Although an ALJ may not disregard a claimant's testimony

28  solely because it is not substantiated affirmatively by objective medical evidence,

15

1   the lack of medical evidence is a factor that the ALJ can consider in his credibility
2   assessment.  Burch, 400 F.3d at 681.

3           **2.**    **Analysis**

4         Plaintiff contends a remand or reversal is appropriate because the ALJ did
5   not provide clear and convincing reasons for discounting the credibility of her
6   subjective complaints.  (Plaintiff's Motion at 17-26).  The Court disagrees.

7         First, the ALJ properly discredited plaintiff's subjective complaints based
8   on plaintiff's unexplained failure to seek treatment consistent with the alleged
9   severity of her subjective complaints.  See Molina, 674 F.3d at 1113 ("We have
10  long held that, in assessing a claimant's credibility, the ALJ may properly rely on
11  unexplained or inadequately explained failure to seek treatment or to follow a
12  prescribed course of treatment.) (citations and quotation marks omitted); see also
13  SSR 96-7p at *7 ("[claimant's] statements may be less credible if the level or
14  frequency of treatment is inconsistent with the level of complaints, or if the
15  medical reports or records show that the [claimant] is not following the treatment
16  as prescribed and there are no good reasons for this failure.").  Here, as the ALJ
17  noted, plaintiff reported in connection with her application for benefits that she
18  had not received any recent medical treatment and was not taking any medication.
19  (AR 31) (citing Exhibits 13E [AR 235], 14E [AR 237]).  In addition, at the
20  October 1, 2009 hearing plaintiff testified that she had not received medical
21  treatment for a year and a half.  (AR 78-79).

22        Second, the ALJ properly discounted plaintiff's credibility due to internal
23  conflicts within plaintiff's own statements and testimony.  See Light v. Social
24  Security Administration, 119 F.3d 789, 792 (9th Cir.), as amended (1997) (in
25  weighing plaintiff's credibility, ALJ may consider "inconsistencies either in
26  [plaintiff's] testimony or between his testimony and his conduct"); see also Fair,
27  885 F.2d at 604 n.5 (ALJ can reject subjective symptom testimony based on
28  contradictions in plaintiff's testimony).  For example, as the ALJ noted, in a

1   function report plaintiff stated that she would "shop once or twice a month" for

2   about three hours at a time, but during a consultative psychological evaluation

3   plaintiff told the psychologist that she "[did] not go shopping or run errands."

4   (AR 31) (citing Exhibit 5E at 8 [AR 209], Exhibit 5F at 3 [AR 291]).  Likewise, in

5   her function report plaintiff stated that she could not go out alone because she gets

6   lost easily, but during the same psychological evaluation plaintiff stated that she

7   "can travel alone."  (AR 31).

8          Third, the ALJ properly discredited plaintiff's subjective complaints as

9   inconsistent with plaintiff's daily activities.  See Thomas v. Barnhart, 278 F.3d

10  947, 958-59 (9th Cir. 2002) (inconsistency between the claimant's testimony and

11  the claimant's conduct supported rejection of the claimant's credibility); Verduzco

12  v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistencies between claimant's

13  testimony and actions cited as a clear and convincing reason for rejecting the

14  claimant's testimony).  For example, as the ALJ noted, contrary to plaintiff's

15  allegations of disabling psychological symptoms, plaintiff (1) stated in her

16  function report that her daily activities included caring for her mother (who was

17  disabled from a stroke) and doing household chores (i.e., washing dishes,

18  sweeping, mopping), and (b) stated during a July 14, 2010 consultative

19  psychological evaluation that she was "able to dress and bathe herself without

20  assistance."  (AR 28) (citing Exhibit 5E [AR 207-08]; Exhibit 5F at 3 [AR 291]).

21  While plaintiff contends that such activities "do not equate or rise to the level of

22  work activities" (Plaintiff's Motion at 25), the Court will not second-guess the

23  ALJ's reasonable interpretation that they do, even if such evidence could give rise

24  to inferences more favorable to plaintiff.

25         Finally, the ALJ properly discounted the credibility of plaintiff's subjective

26  complaints based on plaintiff's apparent lack of candor at the hearing.  The ALJ

27  explained:

28  ///

17

1

2

3

4

5

6

7

8

At the hearing, [plaintiff] was vague and unable to give a straightforward answer on why she was pursuing business administration in junior college rather than seeking work within her capacity, e.g., a simple job that can be learned by demonstration within a short period of time.  Her testimony reflects that if such a job would pay for an apartment and a car, then she could do that.  Instead, overall it appears that [plaintiff] is seeking financing of her college pursuits by claiming disability.

9  (AR 32).  The record supports the ALJ's findings.  For example, at the hearing

10 plaintiff essentially testified that (1) there were simple jobs that she could do;

11 (2) she chose to attend college rather than to apply for such jobs, however, so she

12 could obtain a position in a different field that interested her; and (3) she was

13 seeking disability benefits "to pay for [college]."  (AR 50-55).  The ALJ was

14 entitled to consider such testimony in determining whether plaintiff's overall claim

15 of disabling symptoms should be believed.  See Tonapetyan, 242 F.3d at 1148 ("In

16 assessing the claimant's credibility, the ALJ may use 'ordinary techniques of

17 credibility evaluation,' such as considering the claimant's reputation for

18 truthfulness and any inconsistent statements in her testimony.") (citations

19 omitted); Fair, 885 F.2d at 604 n.5 ("[I]f a claimant . . . is found to have been less

20 than candid in other aspects of [her] testimony, that may be properly taken into

21 account in determining whether or not [her] claim of disabling pain should be

22 believed.").

23          Accordingly, a remand or reversal on this basis is not warranted.

24   **C.    The ALJ Properly Considered Lay Witness Evidence**

25          **1.    Pertinent Law**

26 Lay testimony as to a claimant's symptoms is competent evidence that an

27 ALJ must take into account, unless he expressly determines to disregard such

28 testimony and gives reasons germane to each witness for doing so.  Stout, 454

18

1  F.3d at 1056 (citations omitted); <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir.

2  2001); <u>see also</u> <u>Robbins</u>, 466 F.3d at 885 (ALJ required to account for all lay

3  witness testimony in discussion of findings) (citation omitted); <u>Regennitter v.</u>

4  <u>Commissioner of Social Security Administration</u>, 166 F.3d 1294, 1298 (9th Cir.

5  1999) (testimony by lay witness who has observed claimant is important source of

6  information about claimant's impairments); <u>Nguyen v. Chater</u>, 100 F.3d 1462,

7  1467 (9th Cir. 1996) (lay witness testimony as to claimant's symptoms or how

8  impairment affects ability to work is competent evidence and therefore cannot be

9  disregarded without comment) (citations omitted); <u>Sprague v. Bowen</u>, 812 F.2d

10 1226, 1232 (9th Cir. 1987) (ALJ must consider observations of non-medical

11 sources, *e.g.*, lay witnesses, as to how impairment affects claimant's ability to

12 work).  The standards discussed in these authorities appear equally applicable to

13 written statements.  <u>Cf.</u> <u>Schneider v. Commissioner of Social Security</u>

14 <u>Administration</u>, 223 F.3d 968, 974-75 (9th Cir. 2000) (ALJ erred in failing to

15 consider letters submitted by claimant's friends and ex-employers in evaluating

16 severity of claimant's functional limitations).

17              **2.     Analysis**

18       Plaintiff contends that the ALJ failed properly to account for the lay

19 statement provided by plaintiff's relative, Ana Huerta.  (Plaintiff's Motion at 26-

20 29) (citing AR 182-89).  The Court disagrees.

21       First, the ALJ properly discredited Ms. Huerta's lay statements that were

22 inconsistent with plaintiff's activities.  <u>Carmickle</u>, 533 F.3d at 1163-64 (ALJ

23 properly rejected lay testimony that plaintiff appeared "uncomfortable in class"

24 because the testimony was "inconsistent with [claimant's] successful completion

25 of continuous full-time coursework."); <u>see</u> SSR 06-3p at *4 (the ALJ may consider

26 "how consistent the opinion is with other evidence").  For example, as the ALJ

27 noted, Ms. Huerta stated that plaintiff was unable to go out alone, yet plaintiff

28 testified that she is able to take public transportation and plaintiff stated during a

consultative psychological evaluation that she relied on the bus for transportation and could travel alone.  (AR 32, <u>compare</u> AR 185 <u>with</u> AR 53, 291).   Second, the ALJ properly rejected Ms. Huerta's statements regarding plaintiff's limitations that were inconsistent with plaintiff's own accounts of her abilities.  <u>See</u> <u>Lewis</u>, 236 F.3d at 512; SSR 06-3p at *5 (ALJ may consider "[a]ny [] factors that tend to support or refute [lay] opinion").  As the ALJ noted, while Ms. Huerta reported that plaintiff's condition affected talking, memory, completing tasks, understanding, following instructions, and getting along with others, plaintiff did not report such restrictions.  (AR 32; <u>compare</u> AR 187 <u>with</u> AR 211).

Accordingly, a remand or reversal on this basis is not warranted.

## D.    The ALJ Properly Evaluated Plaintiff's Residual Functional Capacity

Plaintiff contends that the ALJ failed properly to assess his residual functional capacity, in essence because the ALJ did not account for the significant mental limitations expressed in Dr. Curtis' Opinions.  (Plaintiff's Motion at 29-31).  As discussed more fully above, however, substantial evidence supported the ALJ's residual functional capacity assessment for plaintiff, and plaintiff has not shown that Dr. Curtis' Opinions undermine that assessment.  (<u>See</u> <u>supra</u> Part IV.A.2).  Accordingly, a remand or reversal on this basis is not warranted.

## V.    CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:   November 28, 2012

_____
                    /s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE